IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICK G. STALLINGS,

      Petitioner,

vs.                                                                                 No. CIV 20-0014 JB/KBM

DWAYNE SANTISTEVAN and
ATTORNEY GENERAL OF THE STATE
OF NEW MEXICO,

      Respondents.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed February 2, 2021 (Doc. 11)("PFRD"); and (ii) the Response to United States Magistrate Judge Karen B. Molzen Recommended Disposition, filed March 8, 2021 (Doc. 15)("Objections"). This case was referred to the Honorable Karen B. Molzen, United States Magistrate Judge for the United States District Court for the District of New Mexico a report and recommendation pursuant to 28 U.S.C. § 636(b) on January 7, 2020. See Order of Reference Relating to Prisoner Cases, filed January 7, 2020 (Doc. 3). In the Magistrate Judge's PFRD, she recommended that the Court deny Petitioner Rick Stallings' Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed January 6, 2020 (Doc. 1)("Petition"). The Court will: (i) adopt the PFRD; (ii) overrule the Objections; (iii) deny the Petition; (iv) dismiss this action; (v) deny a Certificate of Appealability; and (vi) enter Final Judgment.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended

disposition.  See Fed. R. Civ. P. 72(b)(1)("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement."). Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).  Finally, when resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, Known As: 2121 East 30th Street, Tulsa Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests

that underlie the Magistrate's Act,[1] including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit has held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (citations omitted). "[O]nly an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act." One Parcel, 73 F.3d at 1060. In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit has stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229

---

[1]Congress enacted the Federal Magistrates Act, 28 U.S.C. §§ 631-39, in 1968.

F. App'x 795, 796 (10th Cir. 2007)(unpublished).[2]

The Tenth Circuit also has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")(citations omitted). Cf. Thomas v. Arn, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask. [A failure to object] does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elected to address merits despite

---

[2]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Pevehouse v. Scibana and the other unpublished cases cited herein have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

potential application of waiver rule, but Courts of Appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's PFRD "on . . . dispositive motions, the statute calls for a de novo determination, not a de novo hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980)("Raddatz"). The Tenth Circuit has stated that a de novo determination, pursuant to 28 U.S.C. § 636(b), "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). The Supreme Court of the United States of America has noted that, although a district court must make a de novo determination of the objections to recommendations under 28 U.S.C. § 636(b)(1), the district court is not precluded from relying on the Magistrate Judge's PFRD. See Raddatz, 447 U.S. at 676 ("[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.")(quoting 28 U.S.C. § 636(b)(1)); Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla., 8 F.3d 722, 724-25 (10th Cir. 1993)(holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" was consistent with a de novo determination, because "the district court 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate, . . . [as] 'Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.'")(quoting 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. at 676)(emphasis omitted).

Where no party objects to the Magistrate Judge's proposed findings and recommended disposition, the Court has, as a matter of course in the past and in the interests of justice,

reviewed the Magistrate Judge's recommendations. In Workheiser v. City of Clovis, No. CIV 12-0485 JB/GBW, 2012 WL 6846401 (D.N.M. Dec. 28, 2012)(Browning, J.), where the plaintiff failed to respond to the Magistrate Judge's PFRD, although the Court determined that the plaintiff "has waived his opportunity for the Court to conduct review of the factual and legal findings in the PFRD," the Court nevertheless conducted such a review. 2012 WL 6846401, at *3. The Court generally does not, however, review the Magistrate Judge's PFRD de novo, and determine independently necessarily what it would do if the issues had come before the Court first, but rather adopts the PFRD where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, [obviously]³ contrary to law, or an abuse of discretion." Workheiser v. City of Clovis, 2012 WL 6846401, at *3. This review, which is

---

³The Court previously used as the standard for review when a party does not object to the Magistrate Judge's PFRD whether the recommendation was "clearly erroneous, arbitrary, contrary to law, or an abuse of discretion," thus omitting "obviously" in front of contrary to law. Solomon v. Holder, CIV 12-1039 JB/LAM, 2013 WL 499300, at *4 (D.N.M. Jan. 31, 2013)(Browning J.)(adopting the recommendation to which there was no objection, stating: "The Court determines that the PFRD is not clearly erroneous, arbitrary, contrary to law, or an abuse of discretion, and accordingly adopts the recommendations therein"); O'Neill v. Jaramillo, CIV 11-0858 JB/GBW, 2013 WL 499521 (D.N.M. Jan. 31, 2013)(Browning, J.)("Having reviewed the PRFD under that standard, the Court cannot say that the Magistrate Judge's recommendation is clearly erroneous, arbitrary, contrary to law, or an abuse of discretion. The Court thus adopts Judge Wormuth's PFRD.")(citing Workheiser v. City of Clovis, 2012 WL 6846401, at *3; Galloway v. JP Morgan Chase & Co., CIV 12-0625 JB/RHS, 2013 WL 503744 (D.N.M. Jan. 31, 2013)(Browning, J.)(adopting the Magistrate Judge's recommendations upon determining that they were not "clearly contrary to law, or an abuse of discretion"). The Court concludes that "contrary to law" does not reflect accurately the deferential standard of review that the Court intends to use when there is no objection. Finding that a Magistrate Judge's recommendation is contrary to law would require the Court to analyze the Magistrate Judge's application of law to the facts or the Magistrate Judge's delineation of the facts -- in other words performing a de novo review, which is required only when a party objects to the recommendations only. The Court concludes that adding "obviously" better reflects that the Court is not performing a de novo review of the Magistrate Judges' recommendations. Going forward, therefore, the Court will, as it has done for some time now, review the Magistrate Judges' recommendations to which there are no objections for whether the recommendations are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.

deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the intent of the waiver rule than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate. See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate."). The Court, however, is reluctant to have no review at all if its name is going to go at the bottom of the order adopting the Magistrate Judge's PFRD.

## ANALYSIS

The Court has reviewed de novo Stallings' Petition, the Magistrate Judge's PFRD, and Stallings' Objections. The Court has determined that it will overrule Stalling's Objections. The Court, therefore, will deny Stalling's Petition.

**I.      Grounds Two, Six, Seven.**

Stallings devotes the bulk of his Objections to his disagreement with Magistrate Judge Molzen's analysis of his ineffective assistance of counsel claims, which he asserts in the Petition's Grounds Two and Six. See Petition at 3. Stallings outlines what he considers to be relevant facts underlying his criminal prosecution for possession of a deadly weapon by a prisoner as well as his preferred trial strategy and defense theory in that case. See Objections at 3. Stallings asserts that, had his trial attorneys, Thomas M. Clark and Liane E. Kerr, pursued the strategy and theory he promoted, he "maybe" would have been found either "not guilty because [he] acted under duress" or "guilty of being in possession of simple contraband." Objections at 3. In other words, Stallings suggests that the outcome of his criminal case may have been more favorable had counsel adopted his trial strategy. See Objections at 3.

Factually, Stallings asserts that his possession of a deadly weapon charge arose after a corrections officer observed a fellow inmate, Christopher Denny, pass an envelope to him in his cell, prompting a search of both Denny's cell and his own. See Objections at 1. Stallings explains that corrections officers recovered a sharpened eyeglass piece from his cell. See Objections at 1. Stallings clarifies that the item discovered was an eyeglass "arm" sharpened at the end that fits around a person's ear. Objections at 2. He also asserts that he had escaped successfully from the county jail on more than one occasion using a similar eyeglass piece to remove his handcuffs. See Objections at 2. In Stallings' own assessment, however, the eyeglass piece could not penetrate a person's skin. See Objections at 2.

Next, Stallings describes the legal theory that he urged Mr. Clark and Ms. Kerr to pursue in his deadly weapon case. See Objections at 2. He explains that he urged them to inform the jury that the eyeglass piece was merely a tool that he used to remove his handcuffs and leg restraints, which allowed him to defend himself from fellow inmates' racially-motivated attacks. See Objections at 2. Having suffered previously such attacks, Stallings submits that he "made the tool out of duress," and that it effectively prevented him from being "beaten to death or injured very badly." Objections at 2.

Stallings then contends that Mr. Clark and Ms. Kerr should have introduced certain evidence to establish his duress defense. See Objections at 2. Specifically, he maintains that they should have subpoenaed witnesses to testify about his prior assaults and produced jail videos documenting those assaults. See Objections at 2. Additionally, Stallings insists that counsel should have permitted him to demonstrate for the jury his technique of opening handcuffs and shackles with the eyeglass piece. See Objections at 2. He instead maintains that his attorneys rejected his preferred trial strategy and thereby "purposefully sabotage[ed]" his deadly weapon

case. Objections at 3-4.

Magistrate Judge Molzen addressed similar arguments in her analysis of the Petition's Grounds Two and Six. See PFRD at 18-24. She observed that the Court of Appeals of New Mexico rejected similar ineffective assistance claims, having determined that Stallings' preferred defense theory was unlikely to succeed. See PFRD at 21 (citing Memorandum Opinion at 196-97 (dated Aug. 2, 2018), filed October 27, 2020 (Doc. 10-1)("Judge Hanisee Opinion"). The Court of Appeals of New Mexico reasoned that, despite Stallings' assertion that the eyeglass piece was merely a tool for opening restraints, it fell "squarely within the statutory definition of a deadly weapon." Judge Hanisee Opinion at 193. Magistrate Judge Molzen agreed, and concluded that "the sharpened eyeglass piece described in the record could reasonably be characterized as a 'weapon which is capable of producing death or great bodily harm' and an object 'with which dangerous cuts [could] be given, or with which dangerous thrusts [could] be inflicted.'" PFRD at 23 (citing N.M.S.A. § 30-1-12(B)). As to Stallings' preferred legal theory, Magistrate Judge Molzen characterized it as "inconsistent at best." PFRD at 22. She explained that, although Stallings maintains that the eyeglass piece found in his cell was merely a tool, the elements of duress effectively would require a concession that it was a deadly weapon. PFRD at 22 (citing N.M.S.A. § 30-22-16).

In his Objections, Stallings reiterates that his attorneys refused to interview or subpoena "his" witnesses, whom he identifies as Lionel Clah[4] and Chris Privette. Objections at 4. In her

---

[4]In his Objections, Stallings uses an alternate spelling for this witness: "Lionel Claw." Indeed, Stallings uses various spellings for both prospective witnesses throughout his pleadings. In his state habeas petition, he identifies them as "Lionel Clah" and "Chris Privette," Petition for Writ of Habeas Corpus at 223 (dated May 1, 2019), filed October 27, 2020 (Doc. 10-1); but in the habeas petition filed in this court, he refers to them as "Lionel Claw" and "Chris Prevette," Petition at 17. For their part, Respondents refers to these individuals as "Lionel Clah" and "Chris Privette."

PFRD, Magistrate Judge Molzen observed that "[t]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." PFRD at 23 (quoting United States v. Barrett, 797 F.3d 1207, 1214 (10th Cir. 2015)). Magistrate Judge Molzen went on to determine that counsel's refusal to elicit testimony from Clah or Privette was a "reasonable trial strategy." PFRD at 23. Given the significant weaknesses in Stallings' promoted legal theory, the Court agrees with Magistrate Judge Molzen's conclusion.

Ultimately, Magistrate Judge Molzen recommends that the Court deny Stallings' ineffective assistance of counsel claims, because "there is at least a reasonable argument that Ms. Kerr satisfied the Strickland [v. Washington, 466 U.S. 668 (1984)] deferential standard when she followed a trial strategy other than the one promoted by" Stallings. PFRD at 22. Moreover, because Stallings could not demonstrate that his preferred strategy or theory would have been successful, Magistrate Judge Molzen determined that he could not establish prejudice. See PFRD at 22. The Court agrees with Magistrate Judge Molzen, and with the State courts that have passed upon Stallings' claims before her, that Stallings has not demonstrated that his counsel's failure to pursue his preferred trial strategy constitutes ineffective assistance of counsel.

In his Objections, Stallings maintains that Mr. Clark was also ineffective because he did not pursue the State trial judge's potential conflict of interest. See Objections at 7. He asserts that the State trial judge "was giving favors to witnesses against [him], especially Sandy Lundy, the star witness." Objections at 6. In support, he indicates that he "has phone calls of Sandy talking to July [sic] Harris," whom he describes as the State trial judge's "close friend." Objections at 6. He reports that he "gave Clark the phone calls but [Clark] never looked into it." Objections at 7.

---

Response at 12. The Court adopts the most common spelling used by the parties: "Lionel Clah" and "Chris Privette."

According to Stallings, the trial judge later admitted to going to school with "Budd Harris," Julie Harris' husband. Objections at 7. Stallings explains, however that the trial judge "felt there was no conflict[] and never allowed [him] to present the phone calls." Objections at 7.

Magistrate Judge Molzen considered a similar conflict-of-interest claim when she analyzed Ground Seven of Stallings' Petition. See PFRD at 9-14. In Ground Seven, Stallings asserted that the State trial judge neglected to decide two motions for change of venue filed in Stallings' underlying criminal cases. See PFRD at 9-14. The record shows that, in a pro se motion for change of venue filed on August 1, 2017, Stallings argued that a change of venue was required, because the State trial judge "had some type of friendship" with J. Harris' husband. Motion for a Change of Venue at 53 (dated Aug. 1, 2017), filed October 27, 2020 (Doc. 10-1)("Venue Motion"). There, Stallings asserted that he "listened to a phone conversation between Julie Harris and . . . Sandy Lundy [in which] Julie tells Sandy that [her husband] knew [the trial judge]." Venue Motion at 53. According to Stallings' motion, Sandy asked Julie to contact the judge "to see if she could get Sandy Lundy 4-Winds Treatment program instead of prison time, which is exactly what [the judge] did." Venue Motion at 53.

At a pretrial hearing in his underlying criminal cases, Stallings confronted the State trial judge about this alleged conflict-of-interest and expressed frustration that Mr. Clark had not moved for her recusal. See Motion Hearing Proceedings at 20 (dated Nov. 1, 2016), filed October 27, 2020 (Doc. 10-1)("Motion Hearing Tr."). In response, the Honorable Karen L. Townsend, District Judge for the State of New Mexico District Court, County of San Juan, explained that Stallings did not have the right to automatically recuse her, as he had already recused the first State judge assigned to his case. See Motion Hearing Tr. at 20. State Judge Townsend also advised Stallings that she was not aware of any conflict on her part that would require her recusal. See Motion

Hearing Tr. at 20.  Mr. Clark assured the judge that he would bring to her attention any potential conflict of which he became aware.  See Motion Hearing Tr. at 20.

Just before Stallings' trial, Ms. Kerr withdrew Stallings' change-of-venue motion. See Pre Trial Conference Proceeding at 76 (dated Sept. 29, 2017), filed October 27, 2020 (Doc. 10-1)("Pretrial Tr.").  Although the record suggests that the motion was withdrawn, Magistrate Judge Molzen reasons in her PFRD that the motion was also implicitly denied when the trial judge directly denied Stallings' conflict-of-interest allegations, noted that she already had denied a previous request for change of venue, and proceeded to trial without changing the venue. See PFRD at 12. Ultimately, Magistrate Judge Molzen concluded that the Petition's Ground Seven lacked merit, because Stallings could not "demonstrate that the state court's resolution (or lack of resolution) of his motion for change of venue was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" PFRD at 13 (quoting 28 U.S.C. § 2254(d)(1)). Magistrate Judge Molzen noted that Stallings has not identified a federal law that the State trial court allegedly violated and is, therefore, unable to demonstrate that he is entitled to federal habeas relief.  PFRD at 13.  The Court agrees that Stallings has not met his burden under 28 U.S.C. § 2254(d)(1) with respect to the change-of-venue claim that he asserts in his Petition.  Accordingly, the Court denies the Petition as to Ground Seven.

To the extent that Stallings now couches his conflict-of-interest claim as one for ineffective assistance of counsel, his claim likewise fails.  Having reviewed the record, the Court concludes that there is at least a reasonable argument that Stallings' counsel satisfies Strickland's deferential standard in declining to pursue the conflict-of-interest claim.  Moreover, Stallings has not demonstrated a reasonable probability that the result of his deadly weapon case would have been

different -- that is, that he would have obtained a change of venue or recusal of State the trial judge -- if Mr. Clark had advanced the conflict-of-interest claim. Indeed, the record suggests that the opposite is true. Having been confronted by Stallings about what he considered to be a conflict arising from the her friendship with J. Harris' husband, both in his pro se motion for change of venue and personally at a pretrial hearing, the trial judge assured the parties, even according to Stallings' account, that no conflict existed. See Objections at 7. Thus, even if Stallings' conflict-of-interest claim is characterized as one for ineffective assistance of counsel, he nevertheless fails to meet his burden under 28 U.S.C. § 2254.

Stallings also asserts two new ineffective assistance claim for the first time in his Objections: (i) that Mr. Clark was ineffective because he failed to communicate; and (ii) that Ms. Kerr was ineffective because she would not allow him to testify in his own defense. Objections at 4, 8. Significantly, however, Stallings did not assert these arguments in his Petition, and "theories raised for the first time in objections to [a PFRD] are deemed waived." See Garfinkle, 261 F.3d at 1031 (10th Cir. 2001). Accordingly, the Court will not consider them here.

Finally, Stallings urges the Court to conduct an evidentiary hearing or to issue a Certificate of Appealability as to his ineffective assistance of counsel claim. See Objections at 10. The Court concludes that no evidentiary hearing is necessary, because Stallings has not made a showing that his claims rely on a "new rule of constitutional law, made retroactive . . . by the Supreme Court[,]" "a factual predicate that could not have been previously discovered through the exercise of due diligence," or that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty," as 28 U.S.C. § 2254(e)(2) requires. Moreover, the Court declines to issue a certificate of appealability as Stallings has failed to show that "jurists of reason could disagree

with the district court's resolution" of his ineffective assistance of counsel claim "or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." See Buck v. Davis, 137 S. Ct. 759, 773 (2017). For the foregoing reasons, the Court denies the Petition as to Grounds Two, Six, Seven.

## II.     **Grounds Three and Four.**

Next, Stallings reasserts his claim that he was denied the right to self-representation. See Objections at 3, 5, 8-9. He contends that when he requested to proceed pro se, the trial court "continued to question [him]." Objections at 3. He maintains that, in fact, State Judge Townsend tried to discourage him from proceeding pro se. Objections at 8. Stallings also reasserts his related claim that he was ejected unconstitutionally from his own trial. Objections at 8. He maintains that although he "never said or even hinted at not participating in his own trial," he figured that State Judge Townsend and Ms. Kerr "wanted to have the trial without" him. Objections at 8. As in his Petition, he maintains that Judge Townsend unconstitutionally excused him from his trial. See Objections at 8.

Having reviewed the record, the Court concludes that Stallings expressed a desire on numerous occasions to proceed pro se. At the same time, the Court agrees with Magistrate Judge Molzen that Stallings complicated the trial court's inquiry into his desire for self-representation. Initially, Stallings vacillated between requesting to proceed pro se and expressing his satisfaction with Mr. Clark's representation. See, e.g., Order Removing Tom Clark as Defendant's Attorney at 64 (dated Aug. 2 , 2017), filed October 27, 2020 (Doc. 10-1); Motion Hearing at 5. Stallings acknowledges his changing view of Mr. Clark's representation in his Objections, where he notes that he withdrew a request to proceed pro se after Mr. Clark allegedly assured him that he would be more diligent, honest, and forthcoming with discovery. Objections at 4. As things progressed,

Stallings indicated that while he did not want to represent himself, he no longer wanted Mr. Clark to represent him. Motion Hearing at 17 (dated Nov. 1, 2016), filed October 27, 2020 (Doc. 10-1)("Nov. 1 Motion Hearing"). The trial judge advised Stallings that he did not have a right to choose a different court-appointed attorney. See Nov. 1 Motion Hearing at 19-21. Because Stallings expressed his dissatisfaction with Mr. Clark's preparation for trial, however, the trial judge inquired as to the steps Mr. Clark had taken to investigate and prepare Stallings' case. See April 11 Motion Hearing at 34-37. Mr. Clark and his investigator outlined for the judge the work they had done on Stallings' cases, and the judge determined that Mr. Clark had rendered effective representation. See April 11 Motion Hearing at 34-37.

Thereafter, at a hearing on Stallings' Motion for Pro-Se Status, a heated argument ensued between Stallings and Mr. Clark. See Aug. 1 Motion Hearing at 60. After hearing the accounts of the individuals who observed the altercation, the trial judge removed Mr. Clark as counsel and explained that justice would not be served by requiring his continued participation in the case. See Aug. 1 Motion Hearing at 61. A written Order Removing Tom Clark as Defendant's Attorney followed on August 2, 2017. See Order Removing Tom Clark as Defendant's Attorney at 63-66. In his Objections, Stallings now contends that because the Order Removing Tom Clark was never rescinded, he should have been permitted to represent himself. Objections at 9. Stallings emphasizes that the order provided that Mr. Clark was "relieved of any obligation to represent or assist [Stallings] in any of his pending matters" and that Stallings was "allowed to proceed pro se." Objections at 9 (quoting Order Removing Tom Clark as Defendant's Attorney at 66).

After the State court issued the Order Removing Tom Clark, Ms. Kerr entered her appearance as stand-by counsel for Stallings. See Aug. 16 Hearing at 70. Stallings later advised the Court that he wanted Ms. Kerr to actively represent him, rather than remaining as stand-by

counsel. See Aug. 16 Hearing at 70. Just before trial, Stallings reversed course again, informing the court that he wanting to proceed pro se and requesting that the court keep Ms. Kerr away from him. See Oct. 12 Hearing at 100; Objections at 8. The court attempted to determine whether Stallings' decision to proceed pro se was an informed decision; however, Stallings became unresponsive. See Oct. 12 Hearing at 101-02. Ms. Kerr offered to sit in the audience while Stallings proceeded pro se or to represent Stallings without his presence. See Oct. 12 Hearing at 101-02. Stallings advised the judge that he preferred to be excused. See Oct. 12 Hearing at 101-02. Consequently, the judge excused Stallings and permitted him to listen to the proceedings through headphones from an area outside of the courtroom. See Oct. 12 Hearing at 101-02. Ms. Kerr tried the case without Stallings' presence in the courtroom. See Oct. 12 Hearing at 101-02.

Passing upon Stallings' claims that he was denied the right to self-representation, the New Mexico Court of Appeals concluded that "the [trial] judge undertook every precaution possible to ensure that [Stallings'] desires to proceed pro se were recognized, that his rights were protected, and that both his written and oral continuous, yet inconsistent, intentions to proceed pro se were thoroughly considered and discussed exhaustively at every turn." Hanisee Opinion at 197-98. The Court of Appeals went on to determine that, given Stallings' "clear and repeated indecisiveness" concerning his pro se status, it was not error for the trial judge to limit his choices at trial. Hanisee Opinion at 197-98.

This Court agrees with Magistrate Judge Molzen's finding that Stallings did not provide a clear and unequivocal assertion of his intent to proceed pro se. Moreover, the Court agrees with both the Court of Appeals and Magistrate Judge Molzen that allowing Stallings to be excused from his own trial, at his request, was reasonable under the circumstances. Stallings fails to overcome the presumption of correctness due to the New Mexico Court of Appeals' determination under 28

U.S.C. § 2254(e), and the Court therefore denies his Petition as to Grounds Three and Four.

## III. Ground One.

Finally, Stallings urges the Court to consider his double jeopardy claim, which he asserted in Ground One of his Petition. See Objections at 10. He argues, just as he did in his Petition, that he was subject to double jeopardy when he was punished twice for the single act of possessing a sharpened eyeglass piece while incarcerated. See Petition at 5. Stallings believes that he presents a "double jeopardy issue because [he] was not yet convicted, [and he] was a pre-trial detainee." Objections at 10. Because pre-trial detainees are "presummed [sic] innocent until proven guilty," Stallings reasons that his criminal prosecution, which followed on the heels of the restriction of his privileges by jail authorities, violated his double jeopardy rights. Objections at 10.

The New Mexico Court of Appeals rejected Stallings' double jeopardy claim based upon its previous decision in State v. Astorga, 2000-NMCA-098, 129 N.M. 736, 13 P.3d 468. See Hanisee Opinion at 193-95. In her PFRD, Magistrate Judge Molzen rejected Stallings' attempt to draw a distinction between double jeopardy as applied to pretrial detainees and to prisoners who have been convicted. See PFRD at 16. She reasoned that the "law is clear that criminal prosecutions following the imposition of disciplinary sanctions, even for the same conduct, do not implicate double jeopardy concerns." PFRD at 17. She further concluded that "when the State prosecuted [Stallings] for a violation of § 38-3-3, it was justified in seeking punishment through a criminal proceeding despite the disciplinary sanctions [Stallings] had already endured for his possession of the sharpened eyeglass piece." PFRD at 17. Accordingly, Magistrate Judge Molzen found that Stallings failed to demonstrate that the Court of Appeals' resolution of Stallings' double jeopardy claim was contrary to or involved an unreasonable application of clearly established federal law. See PFRD at 17. The Court finds no fault with Magistrate Judge Molzen's analysis,

and it agrees with her conclusion. Accordingly, the Court denies the Petition as to Ground One.

IV. **<u>Other Grounds</u>**.

Stallings does not offer specific objections as to the other grounds asserted in his Petition. Nevertheless, having considered those grounds, Magistrate Judge Molzen's recommended resolution, and the record as a whole, the Court finds that none of the additional grounds warrant relief under 28 U.S.C. § 2254. Accordingly, the Court denies Stallings' Petition as to all remaining grounds.

**IT IS ORDERED:** (i) the Magistrate Judge's Proposed Findings of Fact and Recommended Disposition, filed February 2, 2021, is adopted; (ii) the Response to United States Magistrate Judge Karen B. Molzen Recommended Disposition, filed March 8, 2021 (Doc. 15), are denied; (iii) the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed January 6, 2020 (Doc. 1) is denied; (iv) the action is dismissed with prejudice; (v) a Certificate of Appealability is denied; and (vi) a Final Judgment will be entered dismissing this action with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Rick G. Stallings
Hobbs, New Mexico

    *Petitioner pro se*

Jane Bernstein
Assistant Attorney General
Office of the New Mexico Attorney General

*Attorneys for the Defendants Santistevan and Attorney General of the State of New Mexico*